**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: COOPER COMMONS LLC,

———————————————

WEINSTEIN, EISEN & WEISS; DAVID
R. WEINSTEIN; SHARON Z. WEISS,
                          *Appellants,*

v.

DAVID A. GILL, Chapter 7 Trustee,
                            *Appellee.*

No. 06-55624

D.C. No.
CV-05-05215-JVS

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
December 3, 2007—Pasadena, California

Filed January 3, 2008

Before: Harry Pregerson, John T. Noonan, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge Noonan

## COUNSEL

David R. Weinstein, Jacquelyn H. Choi, Los Angeles, California, for the appellants.

John J. Bingham, Jr., John N. Tedford, IV, Los Angeles, California, for the appellee.

## OPINION

NOONAN, Circuit Judge:

Bankruptcy is an intensely practical affair. Bankruptcy seeks fair treatment for everyone. These two principles animate and guide the law within the statutory framework set by the Bankruptcy Code. In this case they appear to clash. On closer examination of the facts, the clash is chimerical.

Weinstein, Eisen and Weiss (the Firm) appeals the judgment of the district court affirming the order of the bankruptcy judge in favor of David A. Gill, Chapter 11 Trustee (the Trustee). In this case of first impression in the Ninth Circuit, we affirm the judgment of the district court.

## FACTS AND PROCEEDINGS

On February 22, 2002, Cooper Commons, LLC (the Debtor) filed a petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code. The Debtor as debtor-in-possession continued to operate the enterprise (the construction of housing). Prior to the bankruptcy filing, the Comerica Bank (the Lender) had lent over $16 million to the Debtor. To save the project, the Debtor entered into three agreements with the Lender providing an additional $7 million. These agreements were each approved by the bankruptcy court. Counsel for the Debtor was the Firm. The Firm represented it in negotiating the agreements. No provision was made in the agreements for payment to the Firm from the Lender's collateral. Each agreement waived any right of the Debtor to surcharge the funds provided by the Lender.

On November 20, 2002, the Trustee was appointed. The Trustee negotiated over $7 million in new financing from the Lender. The agreement with the Lender provided:

> [t]he amounts to be funded to the Trustee pursuant to this subparagraph shall include an amount of $888,469, which sum shall be placed by the Trustee in a separate account for the benefit of the Trustee and his professionals, and which shall be used only to pay the actual and necessary fees and costs of the Trustee and his professionals ("Trustee's Administrative Fund"). The professionals who may look to this fund are the Trustee, all attorneys and accountants that may be employed by the Trustee at the expense of the estate, as well as the fees and costs of the Trustee's field representative, Kenneth B. Roelke, Inc. The Trustee's Administrative Fund shall be available for payment of such fees and costs approved by an order of the Court after notice and an opportunity for hearing. . . .

This agreement was approved by the bankruptcy court.

On February 15, 2005, the Trustee moved to augment the Trustee's Administrative Fund by $250,000. These funds would be subtracted from accumulated funds held as collateral for the Lender's loans. No objection was made by the Lender. The Firm did object: While the Trustee and his counsel were being taken care of, nothing was set aside to pay the Firm for services rendered by it to the Debtor-in-possession.

The Bankruptcy Court granted the Trustee's motion to augment his administrative fund and pay the specified expenses. The Firm appealed to the district court. The district court affirmed the order of the bankruptcy court.

The Firm appeals to us.

## ANALYSIS

The Firm has attempted to persuade us that the future of bankruptcy law is at stake in this case — that if we do not reverse the district court we will have opened the door to side deals with secured creditors by trustees that will permit the trustee to rearrange the payment priorities set by statute and to do so to the profit of the trustee.

The actual case is less momentous. The Debtor as debtor-in-possession negotiated three times with the Lender for financing. In each negotiation the Debtor was represented by the Firm. The agreements governing the financing stated: "Neither the Bank [i.e. the Lender] nor any of the Collateral shall at any time be subject to surcharge or assessment, whether pursuant to Bankruptcy Code § 506(c) or otherwise."

This waiver of surcharge or assessment against the collateral is comprehensive. It applies "at any time." It waives § 506(c) claims in particular and other surcharge claims in general. The waiver was "approved as to form and content"

by the Firm. It was executed by the Debtor. The bankruptcy court entered its approval.

Financing for the Debtor-in-possession was a practical necessity if it was going to run the enterprise. The Debtor-in-possession bargained with the Lender to set the terms of this financing. Part of the bargain was that neither the loan funds nor the collateral for the loan should be subject to charge. In marked contrast with the agreement later made by the Trustee with the Lender, these earlier agreements carried no carve-out from the collateral for administrative expenses. As it was obvious, particularly to the Firm, that there would be administrative expenses, it was not through ignorance or inadvertence that no provision was made to pay them.

[1] The waiver effectively bars the claims of the Firm now made. No wool was pulled over the Firm's eyes — explicitly, the Firm approved the agreement. Consequently, no claim of the Firm against the collateral exists. Whatever claim the Firm has is solely against funds unencumbered by the Lender's lien. The later agreement with the Lender by the Trustee did not retroactively revive or prioritize the Firm's claims.

[2] The firm is incorrect that the establishment of the Trustee's Administrative Fund required the application of § 506(c). In light of the Lender's consent, there was no need for § 506(c) as a statutory hook. The Trustee breached no duty in limiting the allowed claimants under the fund. Claims were limited to the services necessary for the ongoing management by the Trustee of the estate.

The result we reach rests on the conclusion that the Firm has no direct, pecuniary interest in the encumbered assets of the estate. It might be argued, therefore, that the Firm lacks standing to maintain this appeal. Nonetheless, we believe that the Firm made a sufficient showing of potential injury to its interest for us, in this unusual case, not to apply the strict

criteria for standing and to accept the appeal and adjudicate it.

The issue raised by the Firm as to the Trustee's payment to his field agent is not properly before the court.

For the reasons stated, judgment of the district court is AFFIRMED.